| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | NO. 3:22-CR-00149-RJC |
| ) | |
| JAYTON GILL, ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM,
and MOTION FOR DOWNWARD VARIANCE**

NOW COMES Defendant, JAYTON GILL ("Mr. Gill"), by and through counsel, and hereby submits this Sentencing Memorandum and motions for downward variances from the advisory guidelines range determined under the U.S. Sentencing Guidelines.

**I.    MOTION FOR DOWNWARD VARIANCE (Application of § 2S1.3)**

From approximately 2015 to February 2021, Mr. Gill provided crypto currency exchange services for people wanting to invest in and/or trade crypto currencies. His conduct was not per se unlawful. Rather, where he ran afoul of the law was that he failed to register his business with the State of North Carolina as required by 31 U.S.C. § 5530. Thus, his business constituted "an unlicensed money transmitting business" under 18 U.S.C. § 1960 [PSR, The Offense Conduct, ¶¶ 5-6]

Today, his business is properly registered and licensed.

The guideline for a violation of 18 U.S.C. § 1960 is U.S.S.G. § 2S1.3. Pursuant to § 2S1.3(a)(2), the base offense level is 6, *plus the number of offense levels from the table under U.S.S.G. § 2B1.1 corresponding the amount of funds Mr. Gill exchanged for people before he was licensed*. [PSR, ¶ 28] Mr. Gill respectfully moves the Court for a downward variance from the advisory guidelines range determined under U.S.S.G. § 2B1.1 on the grounds that application of that section substantially overstates the seriousness of the offense.

§ 2B1.1 states that it is intended for offenses involving larceny, embezzlement, and other forms of theft, as well as property damage or destruction, fraud and deceit, forgery, and counterfeiting. [§ 2B1.1 Introductory Commentary] None of that occurred here. Mr. Gill's offense was failing to register his otherwise lawful business. For this reason, using § 2B1.1 to determine Mr. Gill's advisory guideline range is both unfair and unreasonable.[1]

As an initial matter, the table set out in § 2B1.1 provides, on its face, that it is designed to measure the *loss* incurred by victims of the offense conduct. Here, however, there were no victims of Mr. Gill's count 1 offense conduct, and there was no monetary loss—intended or actual—to anyone. [PSR, ¶ 22] As such, application of § 2B1.1 yields an advisory guidelines range that overstates the seriousness of his offense conduct in this case.

---

[1] Mr. Gill acknowledges that registration laws like those set out in 31 U.S.C. § 5530 are important, in part, because they allow the government to monitor potentially surreptitious activities, and his knowing violation of this requirement served to frustrate a legitimate government function. He accepts full responsibility for his conduct, and acknowledges that there are consequences under the law for same. His contention here is that application of the loss table under U.S.S.G. § 2B1.1 results in an advisory guideline range that overstates the seriousness of the offense conduct in this case.

Mr. Gill's argument finds support in the Commentary to U.S.S.G. § 2B1.1 itself:

> 21.  Departure Considerations.
>
> (C)  Downward Departure Consideration.—There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted.[2]

To its credit, the pragmatic, formula-based approach to sentencing embraced by the United States Sentencing Guidelines brings commendable elements of transparency and uniformity to the sentencing process. Unfortunately, this approach occasionally leads to an advisory guideline range that is not commensurate with the offense conduct for which a defendant is to be sentenced. Mr. Gill respectfully submits that this is one of those occasions.

The violation of 18 U.S.C. § 1960 in this case produced no victims, had no actual or intended monetary loss, and was not intended to promote unlawful activity. For these reasons, determining a sentencing range based on a monetary loss table makes little practical sense. In fact, under the circumstances of this case, setting an advisory guideline range based on any monetary measure seems misguided. If one believes that some "monetary" measure should be used in the calculus, perhaps a more appropriate measure might be the proceeds Mr. Gill's business earned during the time it operated without a license.

---

[2] In the Plea Agreement, the parties agreed not to seek a departure from the offense level. Accordingly, Mr. Gill requests a variance on grounds that the properly calculated offense level overstates the seriousness of the offense conduct in this case.

3

Here, that amount was $475,000. [See Plea Agreement, ¶ 8 (k.)] "The defendant agrees . . . to entry of a money judgment in the amount of $475,000, such amount constituting the estimated proceeds of the violation set forth in Count One of the Bill of Information."] By this measure, Mr. Gill's Base Offense Level would be 18. [U.S.S.G. § 2B1.1(b)(1)(G)] After application of U.S.S.G. § 3E1.1(a) and (b), Mr. Gill's Total Offense Level would be 15, which yields and advisory guideline range of 18-24 months.

For each of the foregoing reasons, Mr. Gill respectfully requests the Court vary downward, prior to consideration of the § 3553(a) factors, to a range substantially lower than the 47-46 months suggested by the Guidelines.

## II. MOTION FOR DOWNWARD VARIANCE (18 U.S.C. § 3553(a) Factors)

### A. Introduction

Jayton Gill stands before this Court as a non-violent, first-time offender. He is a loving husband to his wife, and an adoring father to his two young boys. Moreover, letters of support submitted to the Court on behalf of Mr. Gill reflect that he is a good man who has given selflessly of himself to others his whole life. [Ex. A]

At the very outset of the case, Mr. Gill voluntarily—and without the benefit of a proffer letter—met with the government, accepted responsibility for his actions, cooperated in the investigation of his case and agreed to assist the government however he could in its efforts to understand the intricacies of cybercurrency trading. Since that time, Mr. Gill has corrected his misconduct—his business is now licensed,

4

he has paid the full monetary penalty requested by the government ($475,000.00), he has filed all past due tax returns, and has paid the taxes, with interest.

Mr. Gill has been on supervised pre-trial release for one year. His Supervision Officer reports no issues with his supervision. (PSR, ¶ 3)

By statute, Mr. Gill is eligible to be sentenced to a term of probation. For the reasons set forth more fully below, Mr. Gill respectfully moves the Court for a downward variance to a non-custodial sentence that includes the following: supervised probation for a period of thirty-six months, with special conditions that he submit to home detention with location monitoring technology for a period of six months, that he pay the cost of the location monitoring portion of the sentence, and that he complete 100 hours of community service.

B. Sentencing Framework

The sentence imposed should be sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). To that end, the advisory Guidelines are merely one factor to be taken into account in arriving at an appropriate sentence. In this case, consideration of the § 3553(a) factors supports a non-custodial sentence.

1. The nature and circumstances of the offense

Mr. Gill committed two offenses: failing to register/license his cryptocurrency trading business, and failing to timely file and his individual income taxes.

5

### a. Failure to Register/License

As stated above, Mr. Gill acknowledges that registration laws like those set out in 31 U.S.C. § 5530 are important, in part, because they allow the government to monitor potentially surreptitious activities, and Mr. Gill's knowing violation of this requirement served to frustrate a legitimate government function. Mr. Gill accepts total responsibility for his misconduct and acknowledges that there should be consequences for his actions. In this case, however, there is no evidence or allegation that Mr. Gill was using his business to facilitate other crimes or to enable others to do so. There was no monetary loss to anyone, and there were no victims of this offense. Under these circumstances, his offense conduct does not support the imposition of a custodial sentence.

### b. Failure to Timely File and Pay Individual Income Taxes

Mr. Gill's failure to timely file and pay his individual income taxes is a misdemeanor. That doesn't mean it's not serious. Our country relies on individual taxpayers to timely file and pay their taxes. However, there are two mitigating factors applicable to Mr. Gill's offense conduct.

First, in each of the tax years at issue, Mr. Gill timely filed with the IRS a request for an extension of time to file his returns, and with each request, he provided a substantial estimated tax payment. Thus, each year, Mr. Gill alerted the IRS to the fact that he had not yet filed his return for that year and that he owed taxes. There is no evidence or allegation that Mr. Gill engaged in tax evasion of any kind.

Second, the delayed filings were largely a result of the complexity of Mr. Gill's tax returns. Specifically, Mr. Gill's tax liability involved a calculation of "gains" and "losses" from cryptocurrency trading, which required a determination of cost basis for thousands of trades. This was beyond Mr. Gill's ability to personally determine. Most CPA's/tax preparers won't take on this assignment. Mr. Gill had to find a CPA with specialty experience in return preparation for cryptocurrency traders. Once retained, it took the CPA several months to prepare the returns.

Taken as a whole, Mr. Gill's offense conduct, standing alone, does not support the imposition of a custodial sentence.

### 2. The history and characteristics of the defendant

This factor mitigates strongly in favor of a non-custodial sentence in this case.

First, Mr. Gill has no prior criminal history. None. He doesn't even have any traffic tickets. He has been a law-abiding citizen his entire life.

Second, the letters of support submitted to the Court by family, friends, and neighbors tell a remarkable story of a man who is not only a loving husband and father that provides for his family, but also is a man of integrity and moral character whose true character is revealed through acts of kindness and service to others.

On being a loving husband and father who supports his family:

> *"My daughter [Jayton's wife] recently went back to work full time. Jayton takes care of their new baby and son full time."*
>
> *"Jayton handles the "day care" duties (feeding, bathing and nurturing Rowan) and household chores so that Ellen can continue to work and maintain her health insurance plan through her employer."*

7

> *"In these ways, [Jayton's wife] is very dependent on having Jayton with her to tend to household tasks. Furthermore, Jayton gives his newborn son a bath every night and reads to him and plays enthusiastically with him during the day when [his wife] is working. I am especially impressed and proud of how kind and patient he is with both [his wife] and his kids Jasper and Rowan. He is the proper definition of a hard-working, honest family man."*

> *"I have witnessed and admired his hard work ethic and taking responsibility to provide for his family."*

> *"He has made errors, but is a good man and is an asset to our community. Any time kept away from his family would be a significant loss for them, for him, and for us; **we are in desperate need of more people with these qualities in our communities.**"*

On kindness and service to others:

> *"Personally, I know Jayton to be generous with his time, as someone who can be counted on to show up when he is needed as well as generous otherwise. At a time when I was going through a rough period financially, he was kind enough to donate to a fundraiser of mine to assist me in my time of need."*

> *"Jayton cares for his community and donates his time and finances to Habitat for Humanity. For their wedding, they asked for donations to be made to Habitat for Humanity in lieu of gifts."*

> *"He is the kind of person who will drop everything to go to a friend in need; for example, he has gone to the aid of a friend experiencing suicidal ideation on more than one occasion. . . He paid off the remainder of my student loans in a gesture of genuine generosity, ensuring that I would have the best financial start to my independence. He is simply a good human."*

> *"As a person without the luxury of family support, Jayton has lent me room in his house, his time to fix my car without any compensation, and his late-night guidance on many occasions. His support has been the difference between*

> *stability and ruin for me, and without him I am terrified to imagine where my life would be.*
>
> *"Others will write about Jayton's work with charity, and they are right to do so."*
>
> *"He is always willing to help others . . ."*

On integrity and moral character:

> *"When we were roommates sophomore year, Jayton accidently hit a person's parked car in our apartment parking lot and did the right thing and paid to have it fixed. Jayton did not know who owned the car but left a note with his number and address on it. Jayton could have gotten away with it but chose to do the right thing and fix the person's car."*
>
> *"[Once, during a visit to my farm] Jason tried and liked a rifle I wanted to sell. We were unsure of the rules for an interstate rifle transaction so we went to a local guns store to sort it out. The gun store owner said that typically an interstate transaction would require an ATF form and a background check, however, he did not believe we needed to do any paperwork since we were conducting the transaction in person. Nevertheless, Jason opted to pay the store owner to conduct the transaction to ensure it was unquestionably legal."*

On Remorse:

> *". . . I believe he understands the severity of his offense and is deeply remorseful."*
>
> *"In my experience I have found Jayton to be an honest person. He has shared with me all of the details regarding his arrest and legal proceedings, and has answered all of my questions fully and completely. This is how I have come to believe he is deeply remorseful."*
>
> *"I have no doubt [Jayton] has experienced severe mental anguish, both internally and externally, for the poor choices he now wishes he could revert."*

9

The foregoing excerpts from the several letters of support all reflect a common theme—that Jayton Gill is good man, and honest man, a loving, supportive husband and father and an asset to his community. The sentiment of all these people is perhaps best summed up by 53-year-old Steven Zung, a neighbor of Mr. Gill's:

> *"Thank you for taking the time to read my letter. I hope you will take my words to heart and be lenient with this person—not just because he is my friend, but **because our world needs more people like Jayton in it**. I have the utmost confidence that he will learn from his mistakes herein and continue to make positive contributions in the lives of his family and our greater community."*

18 U.S.C. § 3553(a) directs the Court, in determining the particular sentence to be imposed, to consider "the history and characteristics of the defendant." As evidenced by the foregoing, consideration of this factor mitigates strongly in favor of a non-custodial sentence in this case.

### 3. 18 U.S.C. § 3553(a)(2) factors

The Court considers the following in arriving at a fair and just sentence:

**a. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

These factors support a non-custodial sentence.

Clearly, all federal felonies are serious, and a violation of any of them merits a punishment that will promote respect for the law. For many criminal offenses, these two factors alone will often support the imposition of a custodial sentence. In other cases, the offense conduct—while serious—does not require a custodial sentence. Such is the case here.

As stated above, registration laws like those set out in 31 U.S.C. § 5530 are important, in part, because they allow the government to monitor potentially surreptitious activities, and Mr. Gill's knowing violation of this requirement served to frustrate a legitimate government function. Here, however, there is no evidence or allegation that Mr. Gill was using his business to facilitate other crimes or to enable others to do so. There was no monetary loss to anyone, and there were no victims of this offense. Lastly, his business is now registered and licensed.

Similarly, while failure to timely file and pay income taxes is a serious offense, here, Mr. Gill always timely filed for an extension and remitted a substantial estimated tax payment. There is no evidence that he ever engaged in any sort of tax evasion, and there were extenuating circumstances that made it difficult to timely prepare and file the returns at issue.

### b. the need for the sentence imposed to afford adequate deterrence to criminal conduct

This factor also supports a non-custodial sentence under the circumstances of this case.

With respect to individual deterrence, Mr. Gill has been a law-abiding citizen for his whole life. His conduct in this case is unquestionably an aberration. A custodial sentence is not required in order to deter Mr. Gill from engaging in criminal conduct in the future.

With respect to general deterrence, the following serves as substantial deterrence to others who fail to register their money transaction business: you will be brought into federal court, charged with, and convicted of a felony. You may be

11

Case 3:22-cr-00149-RJC-DCK Document 24 Filed 07/11/23 Page 11 of 15

required to forfeit all proceeds your business earned during the period you were not licensed, you will be under federal supervision until your case is resolved, and likely for some period thereafter. And you will be a convicted felon for the rest of your life with accompanying loss of certain rights and privileges.

A custodial sentence—in addition to the foregoing—is not necessary in order to promote general deterrence.

**c.     the need to protect the public from further crimes of the defendant**

This factor also supports a non-custodial sentence under the circumstances of this case.

Mr. Gill's offenses were non-violent, and there were no victims of the offenses other than the IRS. He has paid the IRS in full, with interest. As stated above, Mr. Gill has been a law-abiding citizen his whole life. A custodial sentence is not necessary in this case.

**d.     the need to provide the defendant with correctional treatment**

This factor also supports a non-custodial sentence under the circumstances of this case.

Mr. Gill has worked his whole life, and has supported himself and his family emotionally and financially. This is further attested to by the many persons who submitted letters of support to the Court.

Furthermore, Mr. Gill is not in need of correctional treatment. This is borne out by his employment history, his lack of a criminal record, and by his exemplary conduct during his one year of supervision by Pre-Trial Service.

12

### 4. Other considerations

The following are additional considerations that support the request for a downward variance to a non-custodial sentence:

#### a. Monetary Penalty

In addition to registering his business as required by law, and filing and paying his federal income taxes, with interest, Mr. Grill agreed to forfeit to the government a monetary penalty of $475,000.00. This amount, which Mr. Gill has paid in full, represents the estimated proceeds his cryptocurrency trading business earned during the offense period. In other words, Mr. Gill has forfeited to the government the revenue his business generated as a result of the offense conduct. This is a significant punishment not taken into account by the Guidelines.

#### b. Cooperation/Assistance

At an early stage of the proceedings in this case, Mr. Gill voluntarily and without the benefit of a proffer letter, met with the AUSA handling this case and government agents in order to assist them with the investigation of his case. In addition, at the agents' request, Mr. Gill agreed to provide assistance to the agents in their understanding and investigation of individuals and entities suspected of illegal cryptocurrency transactions. Mr. Gill has provided assistance to the agents for the past year.

As of this writing it is unknown whether the government will file a motion for a downward departure under U.S.S.G § 5K1.1. Whether or not such a motion is filed, the fact that Mr. Gill has cooperated with the government from the outset of this case

and has provided significant assistance to federal agents may be considered as a relevant factor under 18 U.S.C. § 3553(a). *U.S. v. Robinson*, 741 F.3d 588 (5th Cir. 2014), *cited with approval, U.S. v. Terry*, 771 Fed. Appx. 277 (4th Cir. 2019).

## CONCLUSION

Application of the 18 U.S.C. § 3553(a) factors to the circumstances of this case support the imposition of a non-custodial sentence. A sentence of thirty-six months probation, to include six months of home detention with electronic monitoring and 100 hours of community service would be sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

For these reasons, Mr. Gill respectfully prays the Court grant his motion for a downward variance, and impose a sentence of thirty-six months probation, to include six months of home detention with electronic monitoring and 100 hours of community service.

Respectfully submitted this the 11th day of July, 2023.

/s/ Douglas E. Kingsbery
Douglas E. Kingsbery
N.C. State Bar No. 9307

**THARRINGTON SMITH, L.L.P.**
Raleigh, North Carolina 27602
Telephone: (919) 821-4711
Facsimile: (919) 829-1583
Email: dek@tharringtonsmith.com

*Counsel for Defendant Jayton Gill*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2023, I electronically transmitted the foregoing Defendant Jayton Gill's SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE to the Clerk's office using the CM/ECF system for filing and transmittal of Notice of Electronic Filing has been sent to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

**THARRINGTON SMITH, L.L.P.**

/s/ Douglas E. Kingsbery
Douglas E. Kingsbery
N.C. State Bar No. 9307

*Counsel for Defendant Jayton Gill*